**FILED**

**May 10, 2016**

**TN COURT OF WORKERS' COMPENSATION CLAIMS**

**Time: 12:00 PM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| Evodio Davila, | ) | Docket No.: 2015-08-0465 |
| Employee, | ) | |
| v. | ) | State File No.: 29117-2015 |
| Diversified Builders, Inc., | ) | |
| Employer, | ) | Judge: Jim Umsted |
| And | ) | |
| Builders Mutual Insurance, | ) | |
| Insurance Carrier. | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This case came before the undersigned Workers' Compensation Judge on April 25, 2016, upon the Request for Expedited Hearing filed by the employee, Evodio Davila, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The central legal issue is whether the employer, Diversified Builders, Inc., must provide additional medical benefits for Mr. Davila's alleged work-related injuries. For the reasons set forth below, the Court finds Mr. Davila is entitled to ongoing medical treatment with his authorized treating physician, Dr. Nahum Beard, for any injuries related to the work injury of April 9, 2015.[1]

### History of Claim

Mr. Davila is a forty-five-year-old resident of Shelby County, Tennessee. Diversified Builders hired him as a carpenter in February 2015. Mr. Davila claimed he sustained multiple injuries on April 9, 2015, after falling from a walk board at work. At the time of the accident, Mr. Davila's supervisor, Jerry Oglesby, heard Mr. Davila scream and found him lying on the ground. Mr. Oglesby drove Mr. Davila to the emergency room at Methodist University Hospital where the medical provider diagnosed Mr. Davila with a left patellar fracture, cervical neck strain, and fall with loss of consciousness.

---

[1] A complete listing of the technical record and exhibits is attached to this Order as an appendix.

1

Thereafter, Diversified Builders provided Mr. Davila with a panel of physicians from which he selected Dr. Nahum Beard from Campbell Clinic as his treating physician. Mr. Davila presented to Dr. Beard for the first time on April 16, 2015, complaining of pain in his neck, left shoulder, left chest wall, and left knee. Dr. Beard diagnosed Mr. Davila with an aggravation of underlying knee osteoarthritis with potential for a new traumatic meniscal tear, a concussion, and a possible nondisplaced fracture of the acromioclavicular joint or neck. He ordered an MRI of Mr. Davila's cervical spine.

Mr. Davila returned to see Dr. Beard on May 28, 2015. He advised Dr. Beard that his knee had improved, but he continued to experience vertigo and shoulder pain. Dr. Beard noted the cervical MRI ruled out any deep ligamentous injuries or major cervical issues, so he ordered physical therapy for Mr. Davila's shoulder and neck. He also referred Mr. Davila for a neurological evaluation. Later, on September 2, 2015, Dr. Beard referred Mr. Davila to Dr. Throckmorton to consider surgical intervention for Mr. Davila's left shoulder. Dr. Beard ultimately opined Mr. Davila's left hip pain, concussion, post-concussion syndrome, chest wall pain, cervicalgia vertigo, and acromioclavicular separation of the left shoulder were all a "direct result of the trauma he sustained on the job."

Mr. Davila selected Dr. Alan Nadel from a panel of neurologists on June 2, 2015. He began treating with Dr. Nadel on June 19, 2015, with complaints of headaches, memory issues, photophobia, blurred vision, and nausea. Dr. Nadel treated Mr. Davila's symptoms with medication and ultimately referred him for an ENT evaluation and for neuropsychological testing. Dr. Nadel completed a final medical report on April 6, 2016, indicating Mr. Davila retained no permanent impairment from a neurological standpoint and was returned to regular duty work as of March 24, 2016.

On September 16, 2015, Dr. Davila presented to Dr. Christopher Hall at Memphis ENT Group for his hearing loss and vertigo issues. The testing performed by Dr. Hall was consistent with ossicular chain disruption. In addition, Dr. Hall opined that Mr. Davila's disequilibrium on vestibular testing could be the result of a central nervous system abnormality relating to the brainstem. He recommended either surgery or hearing aids, and Mr. Davila chose the hearing aids. Dr. Hall never addressed the issue of causation in his office notes.

Mr. Davila underwent a neuropsychological evaluation with Dr. James Walker on October 13, 2015. The testing indicated that Mr. Davila, at worst, suffered from a mild head injury on April 9, 2015, and had no cognitive impairment related to the April 9, 2015 injury. Following the evaluation, Dr. Walker placed Mr. Davila at maximum medical improvement from a mental standpoint.

Instead of authorizing Mr. Davila to treat with Dr. Throckmorton, per Dr. Beard's September 2, 2015 referral, Diversified Builders provided Mr. Davila with a panel of

2

orthopedic surgeons from which he selected Dr. Robert Lonergan. However, Dr. Lonergan's office note of November 5, 2015, indicated Mr. Davila presented for an independent medical evaluation for his left shoulder and upper extremity rather than for treatment. Dr. Lonergan recommended a left-shoulder MRI to rule out internal derangement but specifically stated Mr. Davila's shoulder injuries and complaints of pain were "directly related to his work-related injury sustained in April 2015." Dr. Lonergan ultimately recommended surgery for Mr. Davila's left shoulder.

On March 21, 2016, Diversified Builders sent Mr. Davila for an independent medical evaluation with Dr. Claiborne Christian. Dr. Christian examined Mr. Davila's left shoulder and left knee. While Dr. Christian agreed with Dr. Lonergan's assessment that Mr. Davila needed surgery for his left shoulder, he did not agree that the shoulder or knee injury were related to Mr. Davila's work injury.

Immediately prior to the Expedited Hearing held on April 25, 2016, the Court heard Diversified Builders' Motion to Compel further responses to discovery. The Court determined that Mr. Davila was not required to furnish his social security number. He was, however, required, to provide a list and address of all medical providers for the previous ten years, the approximate dates of treatment, his name as provided to each medical provider, and his date of birth.

During the Expedited Hearing, Mr. Davila testified he fell approximately twenty-five feet from a walk board while working for Diversified Builders on April 9, 2015. He stated the left side of his body hit concrete when he fell, and he indicated he blacked out for a short period. According to Mr. Davila, his supervisor, Jerry Oglesby, was working on the other side of the house when he fell and took him to the emergency room. Mr. Davila gave a detailed description of his medical treatment but noted he continues to need medical care. He testified that he asked to return to his treating physician, Dr. Beard, but Diversified Builders denied his request.

Mr. Davila's wife, Flora Colunga, testified Mr. Davila's face was so swollen when she arrived at the emergency room that he looked like "the Elephant Man." She stated her husband is a healthy man and never goes to the doctor. She admitted he did seek treatment for past workers' compensation injuries, a dog bite, as well as an eye issue, and she noted he did have a scar on his stomach from an operation he had before she knew him.

Diversified Builders called its owner, Todd Tigner, and foreman, Jerry Oglesby, to testify on its behalf. Mr. Tigner testified that Mr. Oglesby advised him of Mr. Davila's accident on his way to take Mr. Davila to the hospital. After speaking to Mr. Oglesby, Mr. Tigner went to the hospital to see Mr. Davila and noted he had no visible sign of injury. He also testified he went to the accident scene after visiting Mr. Davila in the hospital. Mr. Tigner mentioned the ladder had fallen, but that the walk board was still in

3

the air though leaning. He estimated that the walk board was only twelve or thirteen feet above the ground rather than twenty-five feet.

Mr. Oglesby testified he was working with Mr. Davila and another employee named Zack on April 9, 2015. They were installing siding on a house in Harbortown. According to Mr. Oglesby, he told Mr. Davila and Zack to come down from the walk board to help him on the other side of the house. Zack got down, but Mr. Davila stayed on the walk board to finish his last pieces of siding. Mr. Oglesby stated he had not gotten to the other side of the house when he heard Mr. Davila scream. He estimated that it took him about five seconds to get back to Mr. Davila. When he got there, Mr. Davila was lying in some bushes on the ground. He was conscious and speaking, and he complained that his chest hurt and he was dizzy. Mr. Oglesby and Zack helped Mr. Davila to the truck and took him to the hospital. Mr. Oglesby testified that Mr. Davila did not look swollen at the hospital. Mr. Oglesby further noted that he later went back to the scene of the accident. He said the walk board was still in the air but was tilted. He measured the height of the walk board from the ground and found it to be thirteen feet high.

### Findings of Fact and Conclusions of Law

*General Legal Principles*

At an Expedited Hearing, Mr. Davila need not prove every element of his claim by a preponderance of the evidence in order to recover temporary disability and/or medical benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

*Medical Benefits*

In this case, the parties do not dispute Mr. Davila sustained a work-related accident. However, Mr. Davila is claiming a multitude of injuries resulting from his fall at work. He must show, "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C) (2015).

Mr. Davila received emergency treatment at Methodist hospital. The hospital admitted him on the date of injury, April 9, 2015, and released him the next day. Diversified Builders provided a panel of physicians to Mr. Davila, and Mr. Davila selected Dr. Beard, an orthopedist at Campbell Clinic. Mr. Davila raised a question at the Expedited Hearing concerning the validity of the panel, as two physicians were located in

4

Nashville, Tennessee, and only Dr. Beard was located in Memphis, Tennessee. The Court need not determine whether the panel was valid, however, because Mr. Davila does not object to Dr. Beard, the physician he selected from the panel, remaining his treating doctor. Therefore, the Court determines Dr. Beard is the treating physician.

In response to a causation request from Mr. Davila's attorney dated November 23, 2015, Dr. Beard answered "yes" to the question, "[Do] you find that Mr. Davila's left knee aggravation arose primarily out of his employment?" Dr. Beard also opined that the following injuries arose primarily out of his employment: left hip pain, concussion, post-concussion syndrome, chest wall pain, cervicalgia vertigo, and acromioclavicular separation left shoulder.

In this case, Mr. Davila requests authorization to return to Dr. Beard for the purpose of examination and treatment for any compensable injuries sustained in the subject work accident. Diversified Builders does not object to Mr. Davila returning to Dr. Beard, but it requests that Mr. Davila provide Dr. Beard with all relevant past and current medical records, so he can determine which injuries are compensable. The Court notes "the opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(14)(E) (2015). The Court agrees it is important to furnish the requested medical records to Dr. Beard for his review in determining causation.

Therefore, the Court determines that Mr. Davila shall immediately provide Diversified Builders a list of his medical providers for the previous ten years, so Diversified Builders can obtain the records. Thereafter, Diversified Builders shall schedule Mr. Davila an appointment with Dr. Beard, so he can examine Mr. Davila's condition, review relevant medical records, and treat injuries he determines to be compensable.

*Temporary Disability Benefits*

An injured worker is eligible for temporary disability benefits if: (1) the worker became disabled from working due to a compensable injury; (2) there is a causal connection between the injury and the inability to work; and (3) the worker established the duration of the period of disability. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978). Temporary total disability benefits are terminated either by the ability to return to work or attainment of maximum recovery. *Id.* Based on statements of counsel at the Expedited Hearing, Diversified Builders is paying temporary total disability benefits, are being paid and there is no need for the Court to consider this issue at this time.

5

**IT IS, THEREFORE, ORDERED** as follows:

1. Diversified Builders or its workers' compensation carrier shall provide Mr. Davila reasonably necessary medical treatment as recommended by his authorized treating physician, Dr. Beard, and as required by Tennessee Code Annotated section 50-6-204 (2015). The parties shall schedule an appointment for Dr. Beard to examine Mr. Davila, review his medical records, and provide treatment for compensable injuries.

2. Mr. Davila is required to provide a list and address of all his medical providers for the previous ten years, the approximate dates of treatment, his name as provided to each medical provider, and his date of birth.

3. This matter is set for a Status Hearing on June 27, 2016, at 1:30 p.m. Central time.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 10th day of May, 2016.**

**Judge Jim Umsted**
**Court of Workers' Compensation Claims**

Status Conference:

A Status Conference has been set with **Judge Jim Umsted, Court of Workers' Compensation Claims. You must call 615-532-9550 or toll-free at 866-943-0014 to participate in the Status Conference.**

6

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Evodio Davila;
2. Photographs (4) of accident scene;
3. Discharge Summary from Methodist University Hospital, dated April 10, 2015;
4. Form C-42 Agreement Between Employer/Employee Choice of Physician, dated April 26, 2015;
5. Campbell Clinic Health History form, dated April 16, 2015;
6. Campbell Clinic Workers' Compensation Status Update and office note, dated May 28, 2015;
7. Campbell Clinic Workers' Compensation Status Update, dated September 2, 2015;
8. Campbell Clinic office note, dated September 2, 2015;
9. Campbell Clinic office note, dated September 22, 2015;
10. Physiotherapy Associates Initial Evaluation report, dated September 30, 2015, and photographs (2), dated September 30, 2015, and October 5, 2015;
11. Dr. Nahum Beard's response to Mr. Davila's causation letter;
12. Form C-42 Agreement Between Employer/Employee Choice of Physician, dated June 2, 2015;
13. Dr. Alan Nadel's office note, dated June 19, 2015;
14. Dr. Nadel's office note, dated August 18, 2015;
15. Dr. Nadel's prescriptions, dated August 18, 2015;
16. Neuropsychological Evaluation Report, dated October 13, 2015;
17. Medical records from Dr. Christopher Hall;
18. Form C-42 Agreement Between Employer/Employee Choice of Physician, dated October 6, 2015;
19. Tabor Orthopedics' Workers' Compensation Initial Authorization Form, dated October 28, 2015;
20. Dr. Robert Lonergan's Independent Medical Evaluation Report, dated November 5, 2015;
21. Dr. Lonergan's response to Diversified Builders' causation letter;
22. Utilization Review Notice of Denial, dated December 9, 2015;
23. Dr. Claiborne Christian's response to Diversified Builders' causation letter;
24. Dr. Christian's Independent Medical Evaluation Report, dated March 21, 2016;
25. Campbell Clinic office note, dated October 8, 2015;
26. Dr. Nadel's Final Medical Report, dated April 6, 2016;
27. Medical records from Methodist University Hospital, dated April 9, 2015;
28. Campbell Clinic office note, dated April 16, 2015;
29. Affidavit of Flora Colunga;
30. Medical records from Dr. Nadel;
31. Settlement paperwork from prior workers' compensation claim, dated September 9, 2010;
32. Settlement paperwork from prior workers' compensation claim, dated April 10,

2014.

Technical record:
1. Petition for Benefit Determination, filed October 6, 2015;
2. Dispute Certification Notice, filed November 10, 2015;
3. Petition for Benefit Determination, filed November 17, 2015;
4. Dispute Certification Notice, filed December 7, 2015;
5. Request for Expedited Hearing, filed February 9, 2016;
6. Order Denying Employee's Request for Extension of Time, Denying Employer's Motion to Deny Claimant's Request for Expedited Hearing, and Setting In-Person Evidentiary Expedited Hearing;
7. Request for Expedited Hearing, filed February 19, 2016;
8. Response to Employee's Request for Expedited Hearing;
9. Motion in Limine to Exclude Irrelevant and Untimely Evidence;
10. Employee's Motion to Amend Petitions and Consolidate Pleadings to Conform with the Documented Medical Treatments Provided by Employer;
11. Employer's Response to Employee's Motion to Amend Petitions and Consolidate Pleadings to Conform with the Documented Medical Treatments Provided by Employer;
12. Order of Continuance;
13. Motion to Compel Discovery;
14. Plaintiff's Opening Brief;
15. Employee's Opposition to Employer's Motion to Compel Request for Interrogatories and Production of Documents; and,
16. Employer's Pre-Hearing Brief.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the __10th__ day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Email Address |
|------|----------------|---------|-----------|---------------|
| Marilyn Sellers-Hobbs, Employee's Attorney | | | X | mhobbs@bellsouth.net |
| Carolina Martin, Employer's Attorney | | | X | carolina.martin@petersonwhite.com |

Penny Patterson-Shrum, Clerk
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

11